# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

John Vest, Margaret Culton, and William
Yates, individually and as the representatives
of a class of similarly situated persons,

       Plaintiffs,

      v.

CVR Energy, Inc., CVR Partners, LP,
Coffeyville Resources Nitrogen Fertilizers,
LLC, Coffeyville Resources Refining &
Marketing, LLC,

       Defendants.

Case No.: 5:26-cv-04011-KHV-TJJ

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS COUNT III OF COMPLAINT

### INTRODUCTION

Plaintiffs bring this First Amended Class Action Complaint alleging that Defendants operated refinery and fertilizer facilities in Coffeyville, Kansas that for years have released documented carcinogens and respiratory toxins—including BTEX compounds, benzene, ammonia, sulfur dioxide, nitrogen oxides, and particulate matter—into the surrounding community at levels the EPA has repeatedly found to constitute High Priority Violations of the Clean Air Act. Plaintiffs are residents who have lived within miles of these facilities for decades. Plaintiff Yates alleges that Defendants' emissions cause his nose to burn when he breathes. (FAC ¶ 74). Plaintiff Culton alleges she suffers from dizzy spells and headaches as a result of Defendants' emissions. (FAC ¶ 76). These symptoms are consistent with the documented short-term physiological effects of the specific chemicals Defendants emit—and the same chemicals are associated, through sustained exposure, with lung cancer, leukemia, non-Hodgkin lymphoma,

cardiovascular disease, COPD, and chronic bronchitis. Plaintiffs seek court-supervised medical monitoring to enable early detection and treatment of the latent diseases to which their ongoing exposure has elevated their risk.

Defendants move to dismiss Count III, characterizing Plaintiffs' medical monitoring claim as an impermissible standalone cause of action and arguing that Kansas law permits such relief only where a plaintiff alleges a diagnosed personal injury. Defendants' argument fails on every level. Plaintiffs do not seek medical monitoring as a freestanding claim premised solely on exposure. Count III expressly incorporates all prior allegations—including the nuisance claims in Counts I and II—and flows directly from the injuries those claims describe to the medical consequence of sustained toxic exposure: significantly elevated risk of serious latent disease requiring periodic monitoring for early detection. (FAC ¶¶ 107, 109–110). Plaintiffs allege present physical injuries—ongoing and concrete—that independently support their nuisance claims and that entitle them to medical monitoring as a consequential remedy flowing from those claims. This is not a case of mere exposure. Plaintiffs are already suffering the documented physiological consequences of years of unlawful emissions, and the same chemicals causing their present symptoms are the ones creating the latent disease risk that makes monitoring medically necessary. Defendants' invented requirement of a diagnosed injury finds no support in Kansas law or in any authority they cite.

## FACTUAL ALLEGATIONS

Defendants operate refinery and fertilizer facilities in Coffeyville, Kansas that have exposed nearby residents to sustained air and water pollution. (FAC ¶ 1). The refinery has been the subject of repeated state and federal enforcement actions and, according to EPA data, has emitted dangerous pollutants since at least 2001, resulting in "High Priority Violations" of the

Clean Air Act. (*Id.* ¶¶ 32–33, 36). Similarly, the fertilizer facility has been fined by governmental agencies and, between 2015 and 2024, released hundreds of thousands of pounds of hazardous air pollutants into the environment. (*Id.* ¶¶ 43–44). Both facilities report Risk-Screening Environmental Indicators exceeding county, state, and national averages. (*Id.* ¶ 49).

Defendants emit pollutants including BTEX compounds, particulate matter, ammonia, sulfur dioxide, and nitrogen oxides, which are associated with serious health effects. These include acute symptoms such as respiratory irritation and burning, as well as long-term conditions including cancer, leukemia, non-Hodgkin lymphoma, cardiovascular disease, COPD, chronic bronchitis, and asthma. (FAC ¶¶ 57–62). Plaintiffs specifically allege present physical symptoms resulting from Defendants' emissions, including nose burning while breathing, dizziness, and headaches. (*Id.* ¶¶ 74, 76). These symptoms are ongoing and are alleged to be caused by Defendants' emissions. (*Id.*).

In addition to these present physical effects, Plaintiffs allege that exposure to Defendants' emissions has placed them at a significantly increased risk of developing serious latent diseases, including cancer and respiratory illness. (*Id.* ¶ 109). As a result, Plaintiffs allege that periodic medical surveillance is necessary to monitor for conditions caused by Defendants' conduct. (*Id.* ¶ 110).

## ARGUMENT

### I.    Standard of Review.

On a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not provide detailed factual allegations; it need only contain sufficient factual matter to state a claim to relief that is plausible on its face. *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). Whether the plaintiff can ultimately prove its allegations is not the question at this stage—a well-pleaded complaint may proceed even if recovery appears remote and unlikely. *Id.* at 556.

## II.      Plaintiffs Have Alleged Present Physical Injuries Cognizable Under Kansas Nuisance Law That Entitle Them to Medical Monitoring.

Despite Defendants' characterization, this is not a case in which Plaintiffs seek medical monitoring as a standalone action predicated solely on exposure. Rather, Plaintiffs seek medical monitoring as a remedy flowing from well-pleaded allegations of present physical injury that independently support their nuisance claims. As this Court recognized in *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515 (D. Kan. 1995), medical monitoring costs are recoverable as a component of damages within an existing tort claim. The *Burton* court dismissed the standalone medical monitoring count while making clear that those same costs remained available as damages arising from the plaintiff's existing injury. *Burton*, 884 F. Supp. at 1523. In reaching this conclusion, *Burton* relied upon *Cott v. Peppermint Twist Management Co.*, 253 Kan. 452 (1993), where the Kansas Supreme Court upheld future medical surveillance costs as consequential damages after plaintiffs consumed dishwashing detergent at a bar. *Burton*, 884 F. Supp. at 1523.

Plaintiffs' allegations here are different in character, but no less compelling. This is not a case of one-time exposure to a single substance producing immediate injury. Plaintiffs allege years of continuous exposure to a documented complex of carcinogens and respiratory toxins—BTEX compounds, benzene, sulfur dioxide, nitrogen oxides, particulate matter, and ammonia—emitted by Defendants' facilities at levels the EPA has repeatedly found to constitute High Priority Violations of the Clean Air Act. (FAC ¶¶ 32–44). These are not hypothetical hazards. The complaint documents that these specific chemicals are known to cause a range of short-term

4

physiological effects, including harm to the central nervous system, respiratory irritation, and burning sensations in the eyes, nose, and throat. (FAC ¶¶ 58–65). Plaintiffs allege that Defendants' ongoing emissions have caused them short-term effects of that kind — nose burning, dizziness, and headaches. (FAC ¶¶ 74, 76). And the same chemicals that are causing those present symptoms are associated, through prolonged exposure, with lung cancer, leukemia, non-Hodgkin lymphoma, cardiovascular disease, COPD, and chronic bronchitis—diseases for which Plaintiffs now face significantly elevated risk. (FAC ¶¶ 58–63, 109).

The latent consequences of this exposure are not speculative—they are already visible in the community surrounding Defendants' facilities. Cancer mortality in Montgomery County is up to 14.2% higher than Kansas overall. Lung and bronchus cancer rates are 14.07% higher than the state average. Chronic lower respiratory disease mortality is 26.7% higher. Asthma rates in Coffeyville stand at 13.2% of the adult population—compared to 9.7% statewide. COPD affects 14.3% of adults in Coffeyville's census tract compared to 6.4% nationally. Life expectancy in Montgomery County is 74.9 years, nearly three years below the statewide life expectancy of 77.6. (FAC ¶¶ 69–73). These are not background statistics—they are the documented public health consequences of decades of unlawful emissions from Defendants' facilities, and they establish precisely why the medical monitoring Plaintiffs seek is not merely appropriate but medically necessary.

As in *Burton* and *Cott*, Plaintiffs' injuries are associated with and flow from an established tort claim. Health injuries suffered as a result of a nuisance give rise to exactly the kind of special, particularized harm that sustains a private right of action and entitles a plaintiff to the full range of consequential damages. *See Culwell v. Abbott Constr. Co.*, 211 Kan. 359, 364 (1973) ("Where a plaintiff suffers personal injury or harm to his health as a result of a public nuisance, there is no

difficulty in finding a different kind of damage which justifies an action by the individual plaintiff."); *see also Melton v. Oklahoma ex rel. Univ. of Oklahoma*, 532 F. Supp. 3d 1080, 1096–97 (W.D. Okla. 2021) (plaintiff stated a public nuisance claim arising from chronic mold exposure in a university dormitory where she alleged that the ongoing environmental exposure caused serious and lasting physical and cognitive injury). Medical monitoring costs are among those consequential damages.

### III.      Count III States a Permissible Claim and Should Not Be Dismissed.

Count III incorporates all prior allegations—including the nuisance claims in Counts I and II—and proceeds directly to the medical consequences of the sustained exposure those claims describe: significantly elevated risk of serious latent disease requiring periodic monitoring for early detection. (FAC ¶¶ 107, 109–110). The medical monitoring claim flows naturally from those incorporated injuries. Because those injuries are cognizable under Kansas nuisance law and are expressly pleaded, Count III states a permissible claim and the motion to dismiss should be denied.

Should the Court nonetheless conclude that Count III must be dismissed as a standalone count, Plaintiffs respectfully request that the Court follow *Burton* and make explicit in its ruling that the dismissal occurs because medical monitoring is available as damages within Counts I and II—not because the remedy is foreclosed. A dismissal that forecloses the remedy entirely would be contrary to Kansas law and inequitable on these facts.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Count III should be denied. In the alternative, the Court should recognize medical monitoring as a form of relief available to Plaintiffs within their nuisance claims.

Dated: April 27, 2026

/s/ Daniel Shane Bangerter
Daniel Shane Bangerter SC 14527
**BANGERTER LAW, P.A.**
P.O. Box 1118
Dodge City, KS 67801
Tel: (620) 339-4115
Fax: (620) 682-9959
shane@blawpa.com

Fletch Trammell (TX Bar No. 24042053)
*Pro hac vice*
**TRAMMELL PC**
3262 Westheimer, #423
Houston, TX 77098
Tel: (800) 405-1740
Fax: (800) 532-0992
fletch@trammellpc.com

*Counsel for Plaintiffs*

7