**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JOHN VEST, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 26-4011-KHV** |
| CVR ENERGY, INC., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**<u>MEMORANDUM AND ORDER</u>**

On January 26, 2026, plaintiffs John Vest, Margaret Culton and William Yates, individually and as representatives of a class of similarly situated persons, filed their <u>Class Action Complaint</u> (Doc. #1) against defendants CVR Energy, Inc. ("CVR Energy"), CVR Partners, LP ("CVR Partners"), Coffeyville Resources Nitrogen Fertilizers, LLC ("CRNF") and Coffeyville Resources Refining & Marketing, LLC ("CRRM"). Plaintiffs allege that defendants' operation of their oil refinery and fertilizer facility in Coffeyville, Kansas has exposed thousands of residents to hazardous air and water pollution, resulting in substantial health risks and interference with the enjoyment and use of private and public spaces. Plaintiffs assert tort claims under Kansas law for private nuisance (Count I), public nuisance (Count II) and medical monitoring (Count III).

On March 10, 2026, defendants filed <u>Defendants CVR Energy, Inc., And CVR Partners, LP's Motion To Dismiss</u> (Doc. #12) and <u>Defendants' Partial Motion To Dismiss Count III Of Amended Complaint</u> (Doc. #14). On March 27, 2026, plaintiffs filed their <u>First Amended Complaint</u> (Doc. #19), which asserts the same claims and alleges additional facts concerning the relationships between the defendant entities. The Court therefore overruled the motions to dismiss as moot. <u>Order</u> (Doc. #21) filed March 27, 2026. This matter comes before the Court on

Defendants CVR Energy, Inc., And CVR Partners, LP's Renewed Motion To Dismiss (Doc. #23) and Defendants' Partial Motion To Dismiss Count III Of Amended Complaint (Medical Monitoring Claim) (Doc. #25), both filed April 10, 2026.  For reasons below, the Court overrules the former motion (Doc. #23) and sustains the latter motion (Doc. #25).

## Legal Standard

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679. The Court need not accept as true those allegations which state only legal conclusions. See id.

Plaintiffs bear the burden of framing their claims with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiffs make a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.  Plaintiffs must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability.  Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Iqbal, 556 U.S. at 678.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere

-2-

possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. See id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (citing Phillips v. Allegheny, 515 F.3d 224, 232–33 (3d Cir. 2008)).

**Factual Background**

Plaintiffs' First Amended Complaint (Doc. #19) alleges as follows:

John Vest, Margaret Culton and William Yates are residents of Coffeyville, Kansas and live within several miles of defendants' facilities.

Defendant CRRM is a limited liability company which owns and operates the oil refinery at 400 North Linden St., Coffeyville, Kansas ("the oil refinery"). Every day, the refinery processes up to 132,000 barrels of crude oil into gasoline, diesel and other fuels. CRRM's sole member is CVR Partners. CRRM is an indirect wholly-owned subsidiary of CVR Energy. Defendant CVR Energy, Inc. is a holding company incorporated in Delaware and has its principal place of business in Texas.

Defendant CRNF owns and operates the nitrogen fertilizer manufacturing plant at 701 East Martin St., Coffeyville, Kansas ("the fertilizer facility"). The facility utilizes a unique petroleum coke gasification process to produce hydrogen to synthesize ammonia and urea ammonium nitrate ("UAN") fertilizers. CRNF is a wholly owned subsidiary of CVR Partners. Defendant CVR Partners is a Delaware limited partnership, with its principal place of business in Texas. In 2011, CVR Energy formed CVR Partners to own, operate and grow its nitrogen fertilizer business and retains 36.8 per cent ownership in it.

Plaintiffs allege that any separation between the defendant entities, CVR Energy, CVR

Partners, CRRM and CRNF, exists on paper only.  CVR Partners is the sole member of CRNF and CRRM.  CVR Energy's senior management team manages CVR Partners.  CVR Energy's 2024 Form 10-K states that CVR Energy directs and controls CVR Partners' management and business operations, including "the election and appointment of directors; business strategy and policies; mergers or other business combinations; acquisition or disposition of assets; future issuances of common units or other securities; incurrence of debt or obtaining other sources of financing; and the payment of distributions on our common units."  CVR Energy directly controls a wholly-owned subsidiary named CVR Energy Holdings, Inc., which itself wholly-owns CVR Services, LLC ("CVR Services").  CVR Services provides operational and administrative services to CVR Energy, CVR Partners, CRNF and CRRM, including the provision of personnel who perform core business functions such as information technology, accounting, investor relations, legal services, corporate compliance, business development and oversight of environmental, health, safety and security functions.  These CVR Services personnel use centralized systems across the defendant entities to perform management, administrative and operational tasks.  CVR Energy uses its control of CRNF and CRRM to cause those entities to enter into commercial contracts with and make payments to CVR Services on terms that are less favorable than those which CRNF and CRRM could have obtained elsewhere.

The defendant entities share many of the same employees and officers.  Mark A. Pytosh is President and Chief Executive Officer of CVR Partners and has the same title at CRNF.  Tracy D. Jackson is Executive Vice President and Chief Financial Officer of CVR Energy and has the same title at CRRM.  CVR Partners is also responsible for certain CRNF debts, including a financial guarantee of up to $45 million that CVR Partners issued to third parties on behalf of CRNF.

The CRNF fertilizer facility and the CRRM oil refinery operate in a physically and

economically interdependent manner.    The CRNF and CRRM facilities share physical infrastructure, including perpetual easements for conveyor belt systems and roads between the facilities.  CRNF is contractually obligated to purchase petroleum coke produced by CRRM, up to 500,000 tons, pursuant to an internal pricing formula and is obligated to purchase certain volumes of hydrogen from CRRM.  CVR Partners has publicly disclosed in its 2023 Form 10-K that it purchases all petroleum coke produced by CRRM and that any disruption in that supply would require CVR Partners to make purchases on the open market at potentially higher prices.

CRNF and CRRM are privately held, and publicly available information regarding their financial condition, corporate control, governance and operational independence is limited.

The Environmental Protection Agency ("EPA") has found that the oil refinery committed "High Priority Violations" of the Clean Air Act ("CAA") in each quarter between March of 2021 through December of 2023 by emitting at least the following pollutants: (1) particulate matter, (2) nitrogen oxides and (3) sulfur dioxide.  The EPA imposed civil penalties and required CRRM to address pollution control measures in July of 2004, March of 2012 and November of 2023, which required CRRM to pay more than $13 million in penalties.

Exposure to particulate matter can lead to diminished lung function and heightened mortality risks from heart disease and lung cancer, and damage property by soiling paint, fabrics and buildings.  Sulfur dioxide poses significant health risks and can cause respiratory irritation, wheezing, shortness of breath and can exacerbate existing respiratory and cardiovascular diseases. Exposure to nitrogen oxides can have severe health effects, potentially leading to chronic lung diseases and contributing to the development of asthma.

The EPA and Kansas have found that CRNF violated the CAA at the fertilizer facility in 2019 and 2020.  The facility emitted hazardous amounts of ammonia, BTEX (benzene, toluene,

ethylbenzene and xylene) and other toxic chemicals.  Exposure to ammonia in high concentrations can cause severe respiratory irritation, burns, chronic respiratory diseases and death and characteristically has a pungent odor.  BTEX is known to have adverse health effects, including cancer and irritation to the skin, eyes, nose and throat.

Both facilities are located in Montgomery County, which has a higher cancer mortality rate compared to Kansas overall of 9.2 per cent in 2017–2019 and 0.5 per cent in 2019–2021.  Likewise, the mortality rate of chronic lower respiratory disease in Montgomery County was 2.7 per cent higher in 2019–2021 and 27.2 per cent higher in 2021–2023 than Kansas overall.

William Yates lives within several miles of defendants' facilities and has lived there for 51 years.  He often sees yellow/orange or black smoke coming from the oil refinery.  Flares coming from the oil refinery burn so bright at night that it makes it look like the sun is coming up.  Noise from the oil refinery is so loud and invasive that it sounds like a jet aircraft taking off.  The emissions from the refinery have caused his nose to burn when he breathes.  John Vest lives within several miles of defendants' facilities.  Defendants' emissions have resulted in black spots all over his cars and his house roof.  He was exposed to the smell of sulfur and rotten eggs.  Margaret Culton resides a few miles from the defendants' facilities.  Defendants' pollutants caused her car paint to peel and also caused her to suffer from dizzy spells and headaches.

## Analysis

In their Renewed Motion To Dismiss (Doc. #23), CVR Energy and CVR Partners ("CVR defendants") seek to dismiss all claims against them.  They argue that plaintiffs fail to state a claim on which relief can be granted under Rule 12(b)(6), since plaintiffs did not allege that their conduct led to their injuries or facts that support piercing the corporate veil to hold them responsible for the torts of their subsidiaries.  In their Partial Motion To Dismiss Count III Of Amended Complaint

(Medical Monitoring Claim) (Doc. #25), all defendants seek to dismiss plaintiffs' claim for medical monitoring (Count III) because Kansas law does not allow medical monitoring as an independent tort claim.

## I.    CVR Energy And CVR Partners' Motion To Dismiss

Plaintiffs' complaint alleges that CRNF and CRRM own and operate the fertilizer facility and oil refinery, respectively, and that CVR Energy and CVR Partners own CRNF and CRRM. Plaintiffs also allege that the separation between the four entities exists on paper only, that CVR Energy operates and manages CVR Partners, CRNF and CRRM, and therefore the Court should pierce the corporate veil and treat all four defendants as one entity. Conclusory statements are insufficient to survive the motion to dismiss, and plaintiffs must allege facts that plausibly support piercing the corporate veil. See Iqbal, 556 U.S. at 678.

The parties disagree whether the Court should analyze piercing the corporate veil under Kansas law or Delaware law. The Court applies the forum state's choice-of-law rules to determine which state's substantive law governs a claim. Nordwald v. Brightlink Commc'ns, LLC, 603 F. Supp. 3d 1030, 1040 (D. Kan. 2022) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). For tort claims, Kansas courts apply the substantive law of the state where the injury was sustained. Dragon v. Vanguard Indus., Inc., 89 P.3d 908, 914 (Kan. 2004); Nordwald, 603 F. Supp. 3d at 1040. Here, the alleged injury occurred in Kansas, so Kansas law governs. In Kansas, the generally accepted rule is that a corporation's charter and the laws of its domicile govern with respect to the fact and duration of corporate existence and the rights and liabilities of its officers, stockholders and directors. See Consol. Beef Indus., Inc. v. Schuyler, 716 P.2d 544, 547 (Kan. 1986); Teran v. GB Int'l, S.P.A., 920 F. Supp. 2d 1176, 1186 (D. Kan. 2013); Blalock v. SRKBS Hotel, LLC, No. 21-2552-DDC-GEB, 2023 WL 2734226, at *3 n.4 (D. Kan. Mar. 31, 2023).

Based on the general rule, defendants argue that Delaware law supplies the governing standard for veil-piercing claims since all four defendant entities are organized under the laws of Delaware.  Plaintiffs respond that the general rule is not so wide-sweeping to apply here, where Kansas residents brought claims against a parent whose subsidiary caused harm in Kansas, especially since Consol and Teran did not specifically involve veil-piercing.  Indeed, the parties have not cited a case where a Kansas court's choice-of-law analysis resulted in it using the veil-piercing law of another state.  On the other hand, Kansas district courts sitting in diversity have applied Kansas law pertaining to alter ego liability.  See, e.g. Schmid v. Roehm GmbH, 544 F. Supp. 272, 274 (D. Kan. 1982) (applying Kansas alter ego law to Florida corporation); see also Quarles v. Fuqua Indus., Inc., 504 F.2d 1358, 1362 (10th Cir. 1974) (affirming application of Kansas alter ego law to Florida corporation in class-action suit).

Kansas veil-piercing law is predicated on preventing injustice, see Doughty v. CSX Transp., Inc., 258 Kan. 493, 498, 905 P.2d 106, 111 (1995), and in this case plaintiffs did not choose to interact with the foreign corporations which allegedly caused their injuries.  Kansas courts have a strong interest in dictating the terms of veil-piercing to prevent injustice to its residents.  Further, generally, the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred.  Shutts v. Phillips Petroleum Co., 235 Kan. 195, 221, 679 P.2d 1159 (1984), rev'd in part on other grounds, 472 U.S. 797 (1985); Grimmett v. Burke, 21 Kan. App. 2d 638, 652 (1995).  Accordingly, the Court applies the law of Kansas.

The concept that one corporation can be held liable as the alter ego of another corporation is well settled under Kansas law.  See W & W Steel, LLC v. BSC Steel, Inc., 944 F.Supp.2d 1066,

1072 (D. Kan. 2013) (citing <u>Dean Operations, Inc. v. One Seventy Assocs.</u>, 257 Kan. 676, 680, 896 P.2d 1012, 1016 (1995)). Courts will not extend the fiction of separate corporate identities to permit one of the corporations to evade its just operations, to promote fraud, illegality, injustice or to defend crime. See <u>Dean Operations</u>, 257 Kan. at 681. "The courts will disregard the fiction of a separate legal entity when there is such domination of finances, policy, and practices that the controlled corporation has no separate mind, will, or existence of its own and is but a business conduit for its principal." <u>Id.</u> Courts should reluctantly and cautiously exercise power to pierce the corporate veil. <u>Sampson v. Hunt</u>, 233 Kan. 572, 579, 665 P.2d 743, 751 (1983).

Defendants assert that plaintiffs cannot prevail because they have not sufficiently alleged facts under the Kansas veil-piercing factors to state a claim against CVR defendants. Whether one corporation operates as an instrumentality of another is a question of fact which involves the consideration of many factors. For example, in determining whether a parent corporation acts as the alter ego of its subsidiary corporation, Kansas courts look to the following ten factors:

(1) whether the parent corporation owns all or a majority of the capital stock of the subsidiary;
(2) whether the corporations have common directors or officers;
(3) whether the parent corporation finances the subsidiary;
(4) whether the parent corporation subscribed to all of the capital stock of the subsidiary or otherwise causes its incorporation;
(5) whether the subsidiary has grossly inadequate capital;
(6) whether the parent corporation pays the salaries or expenses or losses of the subsidiary;
(7) whether the subsidiary has substantially no business except with the parent corporation, or no assets except those conveyed to it by the parent corporation;
(8) whether in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division;
(9) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and
(10) whether the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

<u>Dean Operations</u>, 257 Kan. at 683, 896 P.2d at 1017. No single factor is determinative. <u>W & W</u>

Steel, 944 F.Supp.2d at 1073 (citing Dean Operations, 257 Kan. at 683, 896 P.2d at 1018).  In addition, plaintiffs must show that allowing the legal fiction of separate corporate structures will result in injustice.  W & W Steel, 944 F.Supp.2d at 1073; Dean Operations, 257 Kan. at 687, 896 P.2d at 1020.

Plaintiffs allege facts that allow the Court to reasonably infer that plaintiffs have stated a plausible claim to pierce the corporate veil, including that (1) CRNF and CRRM are wholly owned by the CVR defendants, (2) CRNF and CRRM share common officers with the CVR defendants, specifically CEO Mark Pytosh and CFO Tracy Jackson, (3) CVR Partners financed CRNF through a $45 million guarantee, (4) CVR Partners is the sole member of CRNF and CRRM, (5) CVR Energy controls CVR Services, which provides centralized operational and administrative personnel to all four entities, including personnel for the oversight of environmental, health and safety functions at the facilities which are at issue here and (6) CRRM and CRNF are required to buy and sell primary production input flows based on internal formula rather than the open market.

Plaintiffs must also show that allowing the legal fiction of separate entities would result in injustice.  Purposeful undercapitalization to avoid a potential judgment is the principal injustice that might lead a court to disregard the separation of affiliated entities, but nothing in the caselaw indicates that it is the only injustice that can justify piercing the corporate veil.  Cyprus Amax Mins. Co. v. TCI Pac. Commc'ns, LLC, 28 F.4th 996, 1008 (10th Cir. 2022).  The Kansas Supreme Court has phrased the injustice question as whether recognition of the subsidiary as a distinct entity would result in an injustice to third parties.  Id.  Plaintiffs argue that the fact that CRNF needed a $45 million guarantee is evidence it is undercapitalized, and that both CRNF and CRRM finances are controlled by the parent company through the internal pricing formulas, so the Court must pierce the corporate veil to prevent injustice.  Defendants argue that these facts are not sufficient

to plead undercapitalization and are normal corporate practices. Though it is a close call, the alleged facts sufficiently support plaintiffs' veil-piercing argument under 12(b)(6) notice pleading standards. Therefore, the Court overrules the motion to dismiss by CVR Energy and CVR Partners.

## II.     Defendants' Motion To Dismiss Count III (Medical Monitoring)

Count III of the Amended Complaint (Doc. #19) asserts a claim for medical monitoring. Plaintiffs argue that defendants owed a general duty to exercise reasonable care to prevent foreseeable harm to plaintiffs, and by exposing plaintiffs to hazardous chemicals defendants have created a risk of adverse health consequences. The complaint asks the Court to establish and supervise a medical monitoring regime for early detection and treatment of pollutant-related disease, funded through a Court-supervised trust by defendants.

Defendants move to dismiss this claim because Kansas law does not recognize a stand-alone tort claim for medical monitoring, citing Burton v. R.J. Reynolds Tobacco Co., 884 F. Supp. 1515, 1523 (D. Kan. 1995). Plaintiffs acknowledge Burton, but argue that they do not seek medical monitoring as a stand-alone action and instead seek medical monitoring as a remedy for physical injuries that support their other two nuisance claims.

In Burton, the court dismissed Count 10 of plaintiff's complaint, which alleged a claim for medical monitoring. The court found that Kansas law does not allow a separate medical monitoring tort claim where plaintiff has been exposed to hazardous materials that may increase risk of disease, but plaintiff has not yet suffered injuries. Id. at 1523. However, the Court found that plaintiff's damages from future medical monitoring were allowed under plaintiff's other tort claims as necessary medical costs arising from peripheral vascular disease allegedly caused by defendant. Therefore, the court dismissed Count 10, but allowed plaintiff to pursue medical

monitoring as a remedy under his other claims.

Plaintiffs attempt to differentiate their claims from Burton by arguing that Count III incorporates the prior allegations, and since medical monitoring is a consequence of the injuries arising from the nuisances described in Counts I and II, Count III is not independent and therefore states a permissible claim under Kansas law.  This argument is without merit, since the complaint alleges Count III as a separate tort claim.  Further, plaintiffs' argument is essentially the holding in Burton: that the medical monitoring claim actually prays for damages arising from the other claims, which required dismissal of the independent medical monitoring claim while allowing plaintiff to pursue monitoring under the other claims.

In the alternative, plaintiffs ask for the Court to follow Burton and find that medical monitoring damages are available in their other Counts.  That is the correct outcome here— plaintiffs cannot maintain medical monitoring as an independent claim, but medical monitoring is available under their other Counts, to the extent plaintiffs can prove their right to such relief.  Therefore, the Court sustains defendants' motion to dismiss Count III.

**IT IS THEREFORE ORDERED** that Defendants CVR Energy, Inc., And CVR Partners, LP's Renewed Motion To Dismiss (Doc. #23) filed April 10, 2026 is **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendants' Partial Motion To Dismiss Count III Of Amended Complaint (Medical Monitoring Claim) (Doc. #25) filed April 10, 2026 is **SUSTAINED.**

Dated this 1st day of July, 2026 at Kansas City, Kansas.

/s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge